THOMAS R. SEWALL vs. CEPHAS C. CHAMBERLAIN.

A certificate of shares in the capital stock of a corporation, previously sold and transferred upon its books, may be signed by the treasurer after the dissolution of the corporation by a decree of this court under *St.* 1852, *c.* 55.

ACTION OF CONTRACT to recover the price of ten shares of the capital stock of the Bay State Mills.

At the trial in the superior court of Suffolk at March term 1859, before *Allen*, C. J., the plaintiff introduced evidence tending to show the defendant's agreement to buy the shares, and a request to have the transfer of them made to his son; that the plaintiff caused the certificates of the stock so sold to be assigned by an indorsement on them to the defendant's son, the transfer entered upon the books of the corporation, and a new certificate made and signed by the president; that the defendant promised to pay for the stock on being furnished with the new certificate; but, before the signature of the treasurer had been obtained, the corporation was dissolved and perpetually enjoined against transacting business, and receivers thereof appointed, by a decree of this court; and that afterwards, and before this action was brought, the new certificate was signed by the treasurer, and tendered by the plaintiff to the defendant.

The plaintiff requested the court to rule that the new certificate was valid, and the treasurer was authorized to sign it when he did, and that if the defendant agreed to pay the price on the new certificate being furnished, he became liable on being tendered the certificate thus issued. But the judge declined so to rule; and instructed the jury " that if they should find that the agreement of the parties was that the plaintiff should procure and deliver to the defendant a certificate to him of the stock before the defendant was required to pay for the same, then it became necessary for the plaintiff to procure a valid certificate; and that the treasurer had no authority to sign the certificate, and the corporation no right to issue a new certificate, after the decree of dissolution." The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*S. E. Sewall*, for the plaintiff.

*A. A. Ranney,* for the defendant.

BIGELOW, C. J.    When the decree for the dissolution of the corporation was passed, the title to the shares in controversy had been transferred on the books of the company, and nothing remained to be done but to affix to the certificate the signature of the treasurer, and thereby make the evidence of the defendant's title complete.    This was only a ministerial duty, which it was competent for the treasurer to perform, notwithstanding the corporation had been dissolved under *St.* 1852, *c.* 55.    It involved the exercise of no corporate act or power, but was merely the formal authentication of that which in substance and legal effect had been executed before the dissolution of the corporation took effect.    After a decree dissolving the corporation, its officers would have the same power to sign certificates of shares duly transferred on the books of the corporation previously to such decree, as the clerk would have to make up and sign a record of the proceedings of a meeting of the corporation, which he had omitted to enter on the books when the decree of dissolution was passed.    In such cases, the act of the officer relates back to, and takes effect from, the time when the transaction which he records or authenticates by his signature was in fact completed.    In the present case, as the shares were duly transferred on the books of the corporation before the decree of dissolution was passed, it was the clear duty of the officers of the corporation to execute and deliver the proper evidence of such transfer to the owner or his agent; and they might have been compelled to do so by proper process in case of refusal. The case bears a strong analogy to that class of cases where a note or bill has been sold and delivered, with an intent to transfer the title, but no indorsement has been made on it until after the payee has become bankrupt, in which it has been held that the bankrupt or his assignee is bound to make due indorsement, and may be compelled to do so; and that when his indorsement is made, it has relation to, and takes effect from, the time of the actual sale and delivery of his bill or note.    *Smith* v. *Pickering,* Peake R. 50.    *Ex parte Greening,* 13 Ves. 206.    *Anon.* 1 Campb. 492.    *Lempriere* v. *Pasley,* 2 T. R. 485.

*Exceptions sustained.*